# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DAVID NELMS | : | DOCKET NO. 2:07-1661 |
| VS. | : | JUDGE MELANCON |
| J. P. YOUNG, WARDEN | : | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the Court is a *habeas corpus* petition filed by *pro se* petitioner, David Nelms, on October 3, 2007 pursuant to 28 U.S.C. § 2241.[1]  Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP).  He is currently incarcerated at the Federal Corrections Institute in Elkton, Ohio.  However, when this petition was filed, Nelms was incarcerated at the Federal Corrections Institute in Oakdale, Louisiana.  By this petition, Nelms challenges a prison disciplinary proceeding which resulted the loss of good time credit. The government has filed an answer and opposition to which petitioner has filed a reply. [rec. docs. 15 and 16]. This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## FACTS

In this petition, Nelms complains that his due process rights were violated in connection with a May 2, 2006 prison disciplinary proceeding held at FPC Atlanta, Georgia,

---

[1]The cover letter is dated September 27, 2007, the pleadings were mailed on October 2, 2007 and received and filed on October 3, 2007.

and that there was insufficient evidence to support the two convictions obtained in that proceeding. Accordingly, petitioner seeks restoration of the good time credits that were forfeited as a result of those two disciplinary convictions.

The record reveals that on November 26, 2005, staff at FPC Atlanta noticed inmate movement in the early morning hours. Accordingly, a dorm count was conducted, and it was determined that petitioner was missing from E dorm. Petitioner told staff that he was in G dorm; however, the count for that dorm was correct. Accordingly, petitioner was issued an incident report charging petitioner with being in an unauthorized area (code 316) and Lying (Code 313). After receiving notice of the charges, petitioner admitted the allegations during a December 1, 2005 disciplinary hearing. Accordingly, he was sentenced to a loss of thirteen days good time credit and thirty days in disciplinary segregation. Petitioner did not appeal his convictions or sentences and does not challenge this proceeding in the instant petition.[2]

Thereafter, the Federal Bureau of Prisons, Federal Bureau of Investigation and the Office of the Inspector General began an investigation concerning inmates leaving the camp at night. On December 8, 2005, petitioner was interviewed by Special Investigative Agent Darrol Acre and Special Agent Ray Johnson. By Report dated April 3, 2006, Special Agent Acre submitted his findings to the Warden. [*See* rec. doc. 6, pg. 18; and rec. doc. 19].

---

[2]Even if petitioner attempted to challenge this proceeding, as urged by the government, his claim would be dismissed without prejudice for failure to exhaust administrative remedies. *See Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994); *United States v. Gabor*, 905 F.2d 76, 78 fn.2 (5th Cir. 1990); *Lundy v. Osborn*, 555 F.2d 534, 534-535 (5th Cir. 1977).

The court has obtained the April 3, 2006 memorandum report of Special Investigative Agent Darrol E. Acre to Warden Michael A. Zenk regarding SIS investigative case number ATL-06-043 for *in camera* inspection. That Report has been filed under seal, for protection of Nelms and the other inmates interviewed in connection with the investigation. [rec. doc. 19].

Thereafter, on April 7, 2006, petitioner was cited in an incident report (#1453277) charging him with escape (code 200), being in possession of anything not authorized (a cell phone) (code 305), and giving money to any person for illegal or prohibited purpose (code 217). The incident report charges as follows:

> Based on surveillance camera footage, corroborated by witness statements, and self admission, an SIS investigation determined that inmate David Nelms, Reg. No. 64307-061, paid other inmates to assist him in departing the environs of the Federal Prison Camp on several occasions. Inmate Nelms also admitted to having possession of a cellular telephone to communicate with other inmates during his departures and returns. See SIS investigation case ATL-06-043.

*See* rec. doc. 15-2, pg. 12, Government Exhibit 1. The date and time of the incident is listed as "various", and the place of the incident is listed as "Federal Prison Camp." *Id.*

A copy of this incident report was delivered to petitioner on April 7, 2006, and at that time, he was advised of his right to remain silent. *Id*. at pg. 12 and 13. Petitioner appeared before the Unit Discipline Committee on April 11, 2006 where he stated that "he is innocent and has already seen the DHO" and that "he did not admit anything about himself or others." *Id.* at 12. The Unit Discipline Committee referred the charges to the Disciplinary Hearing

Officer (DHO) further proceedings. *Id.* at 12 and 13.

On April 11, 2006, petitioner was provided with a written notice of the disciplinary hearing on the three alleged violations (escape, giving money to any person for an illegal or prohibited purpose, and possession of anything not authorized, codes, 200, 217 and 305) set before a DHO. *Id*. at 14. On this document, petitioner requested staff representation; K. Donovan was appointed. *Id*. at 14 and 16. Petitioner waived his right to call witnesses. *Id.* at 14. Petitioner also signed a document indicating that he had been was advised of the rights which are afforded to him in connection with his hearing before the DHO.[3] *Id.* at 15.

A disciplinary hearing on these charges was held on May 2, 2006. At the hearing, petitioner was represented by staff representative, K. Donovan. *Id*. at 17. The escape charge was dropped because the DHO found the underlying conduct was the same as that previously addressed in petitioner's prior December 1, 2005 disciplinary hearing. *Id*. at 20. Moreover, the cell phone charge was amended from a Code 305 (possession of anything not authorized) to a Code 108 (possession of a hazardous tool) as the DHO determined that was the more appropriate charge. *Id*. Following the amendment, petitioner was re-advised of his rights

---

[3]This form notified petitioner of the following rights:

1.  The right to have a written copy of the charges against him at least 24 hours prior to appearing before a DHO.
2.  The right to have a full-time member of the staff who is reasonably available to represent him.
3.  The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in his behalf, provided institutional safety would not be jeopardized.
4.  The right to present a statement or to remain silent. Although his silence may be used to draw an adverse inference against him.
5.  The right to be present throughout the disciplinary hearing except during the period of deliberation or when institutional safety would be jeopardized.
6.  The right to be advised of the DHO's decision, the facts supporting that decision (except where institutional safety would be jeopardized), and the DHO's disposition in writing.
7.  The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

and elected to proceed with the hearing. *Id.*

Petitioner denied the charges stating "Not guilty. That's not a true story. You did see me about an incident on Nov. 26. The UDC (Unit Disciplinary Committee) recommended escape on Nov. 28. You sentenced me and I was doing D/S time. When I was questioned about corruption at the Camp, he was asking me about things going on and I told him I don't hang with those people. I was the town driver and most inmates don't like me because of my position. They view me as a police or snitch. The FBI agent asked me if I had anyone in the area. I told him I have a cousin, she goes to Clark, Atlanta. I go to church and try to live by the book. I help out preaching. I try to stay out of trouble." *Id.* at 18.

Petitioner offered the unsworn statements of ten inmates dated April 12, 2006 indicating that these inmates did not make any statement against petitioner in connection with Agent Acre's investigation. *Id*. at 23-25.

The DHO entered a decision on May 10, 2006, finding petitioner guilty of the cell phone and money charges. In reaching this decision, the DHO relied on the information contained in the incident report, the information gathered as a result of the SIS investigation, the memorandum report issued by SIA Acre, Nelms' prior incident report and report of the DHO pertaining to that incident. *Id*. at 18. No confidential information was used by the DHO in support of her findings. *Id*. Specifically, the DHO found that "based on information provided by the reporting employee (SIA D. Acre) . . . [who] reported [that] based on surveillance camera footage and corroborated witness statements (which you were made

5

aware of) and self-admission, an SIS investigation determined that you paid other inmates to assist you in departing the environs of the Federal Prison Camp on several occasions. [Acre] reported you also admitted to having possession of a cellular telephone to communicate with other inmates to coordinate your departure and return." Id. at 19. These findings are confirmed by Acre's Report. [rec. doc. 19].

The DHO further found that although petitioner denied the charges, he offered no evidence to dispute the charges, expressly finding that petitioner's statements and the handwritten statements of other inmates submitted by petitioner were not credible and entitled to lesser weight that the information presented by SIA Acre. The DHO based her credibility determination on several factors, first, petitioner and the other inmates offered contradictory testimony during the disciplinary process, second, Acre had nothing to gain by submitting false evidence against petitioner, and, third, petitioner's interview with Acre was conducted in the presence of FBI Agent Johnson and Special OIG Agent Delmastro, who also took note of petitioner's statements. *Id.* The latter finding is supported by the May 1, 2006 memorandum of SIA Acre to the DHO informing that the questioning of the Camp inmates during the investigation was conducted by Acre along with Special FBI Agent Ray Johnson and OIG Special Agent Dominic Delmastro, all of whom took and maintained notes of the interviews. *Id.* at 22.

Because the DHO considered the nature of petitioner's offenses to be serious in that giving money to other inmates for an improper purpose has, in the past, resulted in serious

fights between inmates and deaths, and that the possession of a cellular telephone by an inmate threatens the safety and security of the entire institution as these devices have been used in the past to effect escapes. Thus, the sanctions imposed included the forfeiture of 40 days of good conduct time for the cell phone violation and 27 days of good conduct time for the money violation, plus an additional 60 days of disciplinary segregation. *Id.* at 20. The DHO also recommended a disciplinary transfer to an institution offering greater supervision and control than that offered in a Federal Prison Camp environment. *Id.*

Petitioner appealed this decision to the Regional Director. [rec. doc. 15-3, pg. 3-4, Government's Exhibit 2]. The Regional Director refuted each of petitioner's claims, referencing the evidence presented (and not presented), credibility determinations made and documents of record, as well as a BOP Program Statement which excludes consideration of statements of confidential informants made in exchange for promises, but not those of other inmates. Accordingly, the Director sustained the DHO's finding of guilt and the sanctions imposed, finding the decision was based on the greater weight of the evidence and that the sanctions imposed were authorized given the severity of the prohibited acts. Specifically, the Director found that the DHO outlined the evidence supporting her finding of guilt and the reasons she did not believe petitioner's defense, expressly finding the statements submitted by petitioner not credible. Furthermore, the Director noted that the reporting staff member would have no reason to fabricate any statement in the incident report or supporting documents, and that petitioner had provided

no support for this allegation. Finally, the Director also noted that petitioner had failed to provide any information in support of his claim that staff made promises or guarantees of favors in exchange for information provided, and that in any event, BOP policy only prohibits the use of statements provided by confidential informants in exchange for promises or favors, not those of other inmates, but that in this case no confidential informants were utilized. *Id*. at 5-6.

Petitioner appealed the Regional Director's decision to the Administrator of National Inmate Appeals, challenging the sufficiency of the evidence against him as there was no "physical evidence" of the alleged "possession or giving" and the veracity of the information provided by SIA Acre. *Id*. at 7-8. By a decision dated September 22, 2006, the Administrator denied petitioner's appeal. *Id*. at 9. In denying the appeal, the Administrator found that the DHO's decision was based on the greater weight of evidence as detailed in Section V of the DHO report, and that the sanctions imposed were commensurate with the severity of the offenses.

Specifically, the Administrator found that the record indicated that petitioner was advised of his rights and made a statement, but that the DHO gave greater weight to the reporting officer's account of the incident, that the behavior underlying the offenses of conviction were different than those of his previous December 1, 2005 convictions and were based on subsequent investigation, and that there was no confidential information used against him and that petitioner provided no evidence to support his claim that

evidence used against him was obtained in exchange for promises. *Id.*

In his petition, filed over one year from the final disposition of petitioner's administrative appeal, Nelms complains that the incident report did not provide him with adequate notice of the charges. More specifically, he asserts that the incident report failed to notify him of the dates, and times of the alleged incidents, failed to mention the amounts of money allegedly involved, did not mention the alleged form of payment, and did not mention the actual location of the incidents, other than that they occurred at the Federal Prison Camp in Atlanta. Petitioner further contends that the incident report was insufficient because it failed to mention the names of staff witnesses against him, and that, although the incident report mentioned surveillance camera footage supported the charges, it did not allege that petitioner was the person in the footage. Furthermore, petitioner complains that the cell phone charges were changed from code 305 to a code 108, but that the hearing was not postponed to allow him additional time to prepare a defense. Finally, petitioner complains that other than the incident report, he was given no documents associated with the charge to prepare his defense.

Petitioner also complains that there was insufficient evidence to support his convictions. Petitioner contends that he did not admit the conduct underlying the charges during his interview in connection with the SIS investigation as alleged in the incident report by SIA Acres. Petitioner cites the absence of a signed statement by him admitting the charged acts in support of this contention. Petitioner also implies that the evidence

submitted at the hearing was fabricated or otherwise inadmissible at the hearing, nonetheless, he was convicted. He asserts that the convictions were based on an "unreliable statement", that of another inmate who said that the acts were committed. However, that inmate was promised benefits in violation of BOP policy. Further, petitioner alleges that this inmate later admitted that his statement was fabricated to obtain those benefits. Petitioner provides no support for this allegation. Further, although the escape charge was dropped, petitioner nevertheless complains that the inmate who was found by the Atlanta Police Department outside the facility was another inmate, John Lester, not petitioner.

The government has responded to the petition and requests that the petition be dismissed because the petitioner was provided with all of the procedural due process to which he was entitled. The undersigned agrees.

## LAW AND ANALYSIS

Initially the court notes that a due process claim is only cognizable when a recognized liberty or property interest is at stake. *Board of Regents v. Roth,* 92 S.Ct. 2701, 2705 (1972). The Fifth Circuit has recognized that a federal prisoner has a liberty interest in his accumulated good-time credit. *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir.2000). Thus, "revocation of such credit must comply with minimal procedural requirements." *Id*. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).   Rather, before a federal prisoner can be deprived of good time credit, the Due Process clause of the Fifth Amendment of the United States Constitution requires that he be given those protections enunciated by the United States Supreme Court in *Wolff v. McDonnell,* 94 S.Ct.  2963 (1994).  *Henson,* 213 F.3d at 898; *Superintendent, Mass. Correctional Institution v.  Hill*, 105 S.Ct.  2768, 2773 (1985) *citing Wolff v. McDonnell,* 94 S.Ct.  2963 (1974); *See also Madison v. Parker,* 104 F.3d 765, 768 (5th Cir.  1997). Under *Wolff*, the prisoner is entitled to (1) advance written notice of the disciplinary charges; (2) an opportunity to present evidence in his defense[4]; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and, (4) a neutral and detached disciplinary body.  *Wolff,* 94 S.Ct. at 2978-2979; *McDuffie v. Estelle*, 935 F.2d 682, 687 (5th Cir. 1991).  Additionally, there must be "some evidence" which supports the disciplinary decision.  *Hill,* 105 S.Ct. at 2772-75.

Because petitioner has been deprived of 67 days of good time credits, the petitioner was entitled to procedural due process in his disciplinary proceeding.  The administrative record from petitioner's disciplinary proceedings and the summary-judgment type evidence produced by the respondent indicate that petitioner was given all

---

[4]This right to present evidence includes the right to call witnesses and present documentary evidence when such is consistent with institutional safety and correctional goals.  *See Superintendent Mass.  Correctional Institute v.  Hill,* 105 S.Ct.  at 2773.

of the due process to which he was entitled.

**Adequacy of Notice**

Petitioner first claims that he did not receive adequate notice of the charges against him. The sufficiency of notice hinges upon whether it allows the prisoner to "marshal the facts" to prepare a defense. *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974); *see also Driver v. Scott*, 163 F.3d 1355 (5th Cir. 1998) *citing Wolff* (unpublished). Nelms received written notice of the charges against him on April 7, 2006. The disciplinary incident report identified the investigating officer making the report (SIA Acre)[5], cited the applicable rules which petitioner allegedly had violated, and it informed him that the evidence to be used against him consisted of surveillance camera footage, corroborated by witness statements, petitioner's self-admission and the results of the SIS investigation.

Nelms was additionally notified of the charges he was facing when he appeared before the UDC on April 11, 2006, at which time petitioner claimed innocence, noting that he had already been disciplined by the DHO for this conduct and that he did not admit anything about himself or others during the SIS investigation. Nelms was further notified of the nature of charges against him when he received the Notice of Disciplinary Hearing form after his appearance before the UDC which again sets forth the alleged violations. These documents, in combination, clearly provided Nelms with sufficient notice of the charges petitioner was facing. Moreover, Nelms' statements before the UDC

---

[5]Thus, although petitioner complains that the incident report fails to mention the names of staff witnesses against him, the record refutes this allegation.

and the DHO reveal that Nelms understood the charges against him, the prohibited behavior on which the charges were based and the evidence which would be used in support of the charges.

Nevertheless, Nelms contends that this notice was inadequate because the disciplinary incident report failed to state the specific times, dates or places of the offenses. However, the omission of such facts does not render notice constitutionally inadequate. *See Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir.1988) (finding inmate received constitutionally adequate notice of a charge of conspiring with others to escape, even though the notice did not specify the dates of the alleged conversations with other inmates about planning an escape, where they took place, their content or who participated in them); *Thomas v. Carver*, 1989 WL 84660, *2-3 (N.D.Ill. 1989) (notice alleging blackmail, sexual misconduct and coercion during an approximate time period, without any specific date, time or place of the alleged offenses, instead noting only the general area where the acts allegedly occurred held constitutionally adequate)*; Gauthier v. Dexter,* 573 F.Supp.2d 1282, 1288-1289, *3 (C.D.Cal. 2008) (rejecting a claim of insufficient notice because the written notice did not include the exact date and time of the alleged offense and did not include all the evidence used against inmate when charging narcotics trafficking within prison grounds on "multiple occasions" "over the course of approximately six weeks"); *Zimmerlee v. Keeney,* 831 F.2d 183, 188 (holding as sufficient a notice that charged smuggling marijuana and amphetamines into the prison

during a five to six month period and that on at least one unspecified occasion a particular named inmate had supplied drugs to the accused)*; Watts v. Castro*, 2001 WL 492477, * 3 (N.D.Cal. 2001) (rejecting claim of inadequate notice based on absence of information of the date, time and place of the charged drug smuggling). *See also Falor v. Superintendent,* 2008 WL 3992241, *2-3 (N.D.Ind. 2008) (upholding disciplinary conviction for criminal gang activity after completion of an investigation into these activities because inmate was the alleged vice president of the gang responsible for the daily activities of the gang which included extortion and intimidation, noting that *Wolff* "only requires advance notice of sufficient facts to inform the accused of the behavior with which he is charged.").

In this case, Nelms' disciplinary incident report identified the specific prohibited acts at issue: escape (code 200), being in possession of anything not authorized (a cell phone) (code 305), and giving money to any person for an illegal or prohibited purpose (code 217); it also identified the approximate time period in which the acts occurred by citing the SIS investigation, and the witness statements and petitioner's self-admission obtained during this investigation, as well as the general area in which the acts took place (Federal Prison Camp Atlanta).

Requiring prison officials to identify the exact time, place and date of each time that Nelms allegedly left the camp, paid other inmates and possessed and/or used a cellular telephone with greater precision would effectively prevent them from taking any

disciplinary action.  Further, it is unlikely that the inmate witnesses would note the exact times or dates that they received money or a call from petitioner, the exact amount of money (or form of payment) which exchanged hands on these occasions or the times and dates of petitioner's extra-prison camp activities. Likewise, in his statement to the SIS investigators, while petitioner admitted leaving the camp on several occasions, paying another inmate for assistance to exit and enter the Camp on these occasions and using a cellular telephone to coordinate his efforts, petitioner did not state the dates, times or amounts of money paid for assistance. [rec. doc. 19].

Moreover, these offenses were ongoing and as such did not lend themselves to more precise definition.  In sum, the disciplinary incident report specified the particular acts and charges for which Nelms was facing discipline, and the nature of the evidence that would be used against him.  The disciplinary incident report thus reasonably allowed Nelms to prepare a defense and therefore was constitutionally adequate.

Petitioner also claims that the notice was insufficient because although the incident report states that the charges are "based on surveillance camera footage", it failed to mention that petitioner had been identified in the footage.  This claim is without merit. Review of the incident report, as a whole, leads to the inescapable conclusion that the footage is mentioned solely because the reporting investigating officer (SIA Acre) determined that the footage supported the charges against petitioner, either because he was identified in the footage or because the footage corroborated the witness statements

or petitioner's self admission obtained in connection with the SIS investigation. It was thus, not necessary to allege that petitioner had been identified as the person in the footage. Moreover, to the extent petitioner had any doubts about the contents of the footage, he could have requested permission to view this evidence prior to the disciplinary hearing; however, the record is devoid of any such request by petitioner.

Further, Nelms has not alleged any prejudice resulting from the allegedly defective notice, nor does he explain how the alleged lack of specificity hindered the preparation of his defense. He has not identified any evidence he was unable to produce for the hearing as a result of the allegedly insufficient notice given; to the contrary, he submitted evidence in his defense, ten witness statements controverting the charges. Petitioner's failure to demonstrate any prejudice defeats his due process claim. *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) *citing Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (a prerequisite to issuance of a writ of habeas corpus is a showing of prejudice as a result of the alleged constitutional violation); *Najar v. Yasuff*, 81 Fed.Appx. 815, 816 (5th Cir. 2003) *citing Hallmark, supra*.; *Thomas v. Young*, 2007 WL 4374379, *3 (W.D.La. 2007); *Groves v. Milwaukee County Jail*, 2008 WL 515006, *11 (E.D.Wis. 2008).

Petitioner also claims that he was denied due process when the cell phone charge was changed from a code 305 (possession of anything not authorized) to a code 108 (possession of a hazardous tool), without allowing him additional time to prepare a defense. Initially, the undersigned notes that the record reveals that on April 11, 2006,

16

petitioner was advised of his rights in connection with the hearing before the DHO, including his right to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO. The record further reveals that after the charges were modified, the DHO re-advised petitioner of his rights, and that petitioner elected to proceed with the hearing. Thus, petitioner waived his right to 24 hour advance written notice of the modified charge.

Moreover, even if petitioner did not waive his right to have an additional 24 hour period to prepare his defense, this claim does not entitle petitioner to *habeas* relief. As previously discussed, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978-79. Thus, the notice is adequate if it allows the inmate to understand the charges and to marshal the facts in his defense. *Id.* When a prisoner is convicted of modified offense based on factual allegations contained in the original charging instrument, his due process right of advance notice has been satisfied. *Northern v. Hanks*, 326 F.3d 909, 910-11 (7th Cir.2003) (prison disciplinary proceeding did not violate inmate's due process rights where he was given advance notice of the original charge and it contained facts sufficient to apprise him that he could be subject to the modified charge); *Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir.1992) (prison disciplinary committee did not deny petitioner due process by elevating charge from possession of contraband to possession of dangerous

contraband because the factual basis for both charges was the same); *see also Walls v. Dretke*, 2006 WL 1715770, * 11-12 (S.D.Tex. 2006) *citing Northern* and *Holt, supra.* (notice constitutionally sufficient when inmate charged with extortion was found guilty of operating an unauthorized business because petitioner had been informed of the facts he had to defend against); *Storey v. Reese,* 2007 WL 2709896, * 3-4 (E.D.Tex. 2007) (increase of charge from a Code 101 to a code 224 by the DHO did not deny federal inmate his due process right to 24 hour notice because the factual basis for both offenses, the assault of another person, was the same); *Wilson v. Knight*, 2006 WL 2578903, *1 (S.D.Ind. 2006) (notice constitutionally sufficient when inmate charged with battery was found guilty of physically resisting because the conduct report gave inmate all the factual information needed to defend against); *Najjar*, 81 Fed.Appx. at 816.

In *Northern*, the inmate was charged with conspiracy and bribery, code 100-A violations, based on an investigation which revealed that the inmate was smuggling tobacco into the institution. He was ultimately convicted of attempted trafficking, a code 111/113-A violation, because the reviewing disciplinary body "believed the facts as set forth in the investigation report more appropriately supported" that charge. *Northern*, 326 F.3d at 910. In finding that the inmate received constitutionally adequate notice of the modified charge, the Seventh Circuit reasoned that "[b]ecause the factual basis of the investigation report gave [the inmate] all the information he needed to defend against the [modified] trafficking charge, the . . . modification did not deprive [the inmate] of his due

process rights." *Northern,* 326 F.3d at 911 *citing Holt.*

Similarly, in *Holt,* the inmate was found in possession of Valium. He was subsequently charged with a minor offense, possession of contraband; however, he was convicted of a more serious offense, possession of dangerous contraband, based on the disciplinary board's determination that the contraband at issue (Valium) was "sufficiently dangerous to warrant an increased penalty." *Holt,* 961 F.2d at 1373. The Eighth Circuit held that the inmate was not denied constitutionally adequate notice of the modified charge, reasoning that *"*the [factual] charge was possession of the Valium, and while the change from a Rule 24 charge to a Rule 3 charge raised the potential penalties, the factual basis for both was possession of the same Valium . . . ." *Id.* Thus, "the conduct violation report gave [the inmate] all of the information he needed to make his defense . . . ." *Id.*

These Seventh and Eighth Circuit cases are consistent with *Wolff* because they hold that notice is adequate when it informs the prisoner of the facts he must defend against even where the offense originally charged is modified.

Here, the written charging instrument given to petitioner on April 7, 2006, almost one month prior to petitioner's hearing before the DHO, includes the allegation that Nelms admitted "possession of a cellular telephone to communicate with other inmates during his departures and returns" from the Camp. This allegation corresponds to the offense for which petitioner was ultimately convicted. Petitioner was notified that he would have to defend a charge of possessing a cellular telephone, whether or not that

device is considered "not authorized" under code 305 or a "hazardous tool" under code 108. The facts provided in the written charge were sufficient to notify petitioner that he could be subject to either charge. There was no change in the factual basis for the offense for which Nelms was ultimately found culpable; the incident report gave Nelms all of the information he needed to defend against either infraction. As such, petitioner received the notice to which he was entitled under the Due Process Clause.

Furthermore, as was the case with petitioner's specificity claim, Nelms has not demonstrated any prejudice resulting from the allegedly untimely notice, nor has he shown how timely notice would have aided his defense. To the contrary, the record establishes that because the factual basis for both offenses is the same, any defense petitioner could have asserted would not have differed as a result of the modified charge. This failure defeats his due process claim. *See Hallmark*, *Simpson* , *Najar, Thomas, supra.* Moreover, because the factual basis for both charges is the same, any defense Nelms could have asserted against the original charge would not have differed as a result of the modified charge. Thus, petitioner cannot demonstrate any interference with his ability to marshall a defense. *See Holt,* 961 F.2d at 1373, *Groves*, 2008 WL 515006 at 11 , *Storey, supra*.

Finally, petitioner complains that other than the incident report, he was given no documents associated with the charge to prepare his defense. Petitioner states that "[a]ccording to BOP policy all of the proper documents, incident report, investigation

memorandums, and any disciplinary action reports are to be made accessible in the inmate's central file." [rec. doc. 1-3, pg. 3]. However, all of these documents were not contained in his file or made available to him. Petitioner's claim fails for several reasons.

First, the record does not demonstrate that petitioner ever asked to see the documents or what they stated prior to the disciplinary hearing, nor has petitioner shown how the DHO may have abused her discretion in not providing Nelms access to this documentation. *See Neal v. Casterline*, 129 Fed.Appx. 113, 115 (5th Cir. 2005) (unpublished) *citing Wolff*, 418 U.S. at 566 (discretion of prison officials), *Richards v. Dretke*, 394 F.3d 291, 294-96 (5th Cir.2004) and *Smith v. Rabalais*, 659 F.2d 539, 541, 546 (5th Cir.1981). Moreover, contrary to petitioner's allegations, the report of the disciplinary hearing officer indicates that petitioner was made aware of the surveillance camera footage and the witness statements which corroborated SIA Acre's report. [rec. doc. 15-2, pg. 19]. Thus, petitioner was informed of the evidence against him.

Furthermore, while the denial of documentary evidence in a prison disciplinary hearing can give rise to a due process claim, prison officials have no general due process obligation to disclose confidential investigative reports used in disciplinary proceedings. *See Thompson v. Hawk,* 978 F.Supp. 1421, 1424 (D.Kan. 1997) *citing Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979-80*; Figueroa v. Vose*, 57 F.3d 1061, *3 (1st Cir. 1995) *citing Mendoza v. Miller*, 779 F.2d 1287, 1298 (7th Cir. 1985), *cert. denied*, 476 U.S. 1142 (1986), *Freitas v. Auger*, 837 F.2d 806, 810 n.7 (8th Cir. 1988), *Wagner v. Williford*, 804

F.2d 1012, 1017-18 (7th Cir. 1986), and on appeal after remand, *Wagner v. Henman*, 902

F.2d 578, 581 (7th Cir. 1990) and *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994).

Moreover, while it has been recognized that material exculpatory evidence in prison

disciplinary proceedings should be disclosed, the documentation allegedly withheld in

this case cannot arguably constitute material exculpatory evidence. *See Thompson*, 978

F.Supp. at 1424 *citing Campbell v. Henman*, 931 F.2d 1212, 1214 (7th Cir.1991). Indeed,

review of the April 3, 2006 memorandum report of Special Investigative Agent Darrol E.

Acre to Warden Michael A. Zenk regarding SIS investigative case number ATL-06-043,

which has been filed herein under seal, reveals that there is nothing exculpatory contained

therein. [rec. doc. 19].

Finally, to the extent that petitioner complains that he was denied due process

because disclosure of these documents was mandated by BOP policy, that claim does not

implicate the constitution. It is well settled that a prison's alleged failure to follow its

own prison regulations does not establish a violation of due process. *Thomas*, 2007 WL

4374379 at * 2 *citing Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989); *Storey*, 2007

WL 2709896, at * 4 *citing Jackson, supra*.; *Dixon v. Hastings*, 117 Fed.Appx. 371, 372

(5th Cir. 2005) *citing Jackson, supra*.

**Sufficiency of the Evidence**

"[T]he requirements of due process are satisfied if some evidence supports the

decision by the prison disciplinary board to revoke good time credits." *Hill,* 472 U.S. at

22

455, 105 S.Ct. at 2774.  A court's determination "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*.  "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-456 (internal citations omitted).  The findings of a prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir. 1995) *citing Smith v. Rabalais,* 659 F.2d 539, 545 (1981).

In the original incident report, the reporting officer, SIA Acre, indicated that the SIS investigation, surveillance camera footage, corroborated by witness statements, and petitioner's self admission revealed that Nelms paid other inmates to assist him in departing the environs of the Federal Prison Camp on several occasions and that Nelms admitted to having possession of a cellular telephone to communicate with other inmates during his departures and returns.  The DHO accorded the statement of the reporting officer (Acre) greater weight than that of the petitioner and the handwritten statements of inmates provided by petitioner, all of which were obtained after the conclusion of the SIS investigation, following petitioner's appearance before the UDC, and after the inmates had the opportunity to communicate with each other and compare notes.  Furthermore, the DHO provided sufficient reasons for her evidentiary and credibility determinations. Finally, the government has produced for *in camera* inspection SIA Acre's April 3, 2006

memorandum report of the SIS investigation. Having reviewed the Report, the court finds

that in light of the information contained therein, the DHO's assessment of the evidence

and her credibility determinations are not arbitrary or capricious. To the contrary, the

Report fully supports the DHO's determinations. [rec. doc. 19]. Because the DHO's

decision is based upon "some evidence" in the record, the decision should not be

disturbed.

To the extent that the petitioner complains that the disciplinary decision was based

on the statements of confidential informants, this court finds that this challenge has no

merit. The record reveals that no confidential informants were utilized in the

investigation. Moreover, to the extent that petitioner claims that the inmate witnesses

interviewed in connection with the investigation constitute confidential informants used

to support the charges against him, that claim is likewise without merit. Initially the court

notes that given the ten handwritten statements obtained by petitioner from other inmates

interviewed in connection with the SIS investigation, the alleged confidential informants

were known to petitioner. Moreover, while it is true that in the Fifth Circuit "'some

evidence' must constitute more than information from a confidential informant when no

evidence is presented to the disciplinary official tending to support the informant's

reliability", the memorandum report in this case contains sufficient indicia of reliability to

constitute "some evidence" sufficient to support the disciplinary board's finding of guilt.

*See Richards v. Dretke*, 394 F.3d 291, 294-95 (5th Cir. 2004) *citing Broussard v. Johnson*,

253 F.3d 874, 876-77 (5th Cir. 2001). The identity of the alleged confidential informants (interviewed inmate witnesses) were known to the investigating officer (Acre) and to the DHO, thus they had the means to ascertain the reliability of the informants. *Richards*, 394 F.3d at 294-95. Further, the statements made by the alleged confidential informants to the investigating officer during their interviews indicated that they had firsthand knowledge of the incidents. *See Smith*, 659 F.2d at 541, 546 (firsthand knowledge is an indicator of reliability). Accordingly, the court finds that the statements of the alleged confidential informants (interviewed inmate witnesses) contained in the SIS report provides "some evidence" to support the finding that petitioner was guilty of the charged offenses.

Petitioner's claim that the DHO improperly relied upon the statements of other inmates, who were allegedly promised benefits in exchange for the information provided in violation of BOP policy, fails to raise a constitutional issue. A prison's alleged failure to follow its own prison regulations does not establish a violation of due process. *Thomas*, 2007 WL 4374379 at * 2; *Jackson*, 864 F.2d at 1251; *Storey*, 2007 WL 2709896, at * 4; *Dixon*, 117 Fed.Appx. at 372.

Nevertheless, even if this was the case, the complained of BOP policy (Program Statement 5270.07) only prohibits the use of statements provided by confidential informants in exchange for promises or favors, not those of other inmates where no such promise was made. As was the case with his administrative appeals, petitioner provides no support for his claim that promises or guarantees of favors were made in exchange for information provided, or that any inmate later admitted fabricating his statement to obtain

any alleged promised benefit.

Finally, to the extent that petitioner complains that he was placed in administrative segregation for an extended period pending investigation of the charges, without his being advised of the pending investigation as required by BOP regulations, that claim likewise fails to implicate the constitution. *Thomas*, *Jackson*, *Storey*, and *Dixon*, *supra.* Moreover, placement in administrative segregation is not an atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life requiring due process protections. *See Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2295 (1995); *Pichardo v. Kinker*, 73 F.3d 612, 612-613 (5th Cir. 1996); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

For these reasons,

**IT IS RECOMMENDED** that the petition for writ of *habeas corpus* be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, this 4th day of February, 2009.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE